UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DELAINA CALDWELL,

    Plaintiff,

v.

MGM GRAND DETROIT, LLC,

    Defendant.

_____/

Case No. 18-13543
Hon. Denise Page Hood

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [#15] and
DENYING DEFENDANT'S MOTION FOR LEAVE TO
SUPPLEMENT ITS MOTION FOR SUMMARY JUDGMENT [#19]**

**I.    INTRODUCTION**

On November 14, 2018, Plaintiff filed a Complaint alleging that Defendants discriminated against her on the basis of her disability, in violation of the Americans with Disabilities Act ("ADA") and the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"). On October 4, 2019, Defendants filed a Motion for Summary Judgment. ECF No. 15. The Motion has been fully briefed. For the reasons that follow, the Court grants the Motion for Summary Judgment and dismisses Plaintiff's cause of action.

1

## II.  BACKGROUND

Plaintiff was hired by Defendant in 1999 and, for approximately the last five years of her employment, worked as an Assistant Shift Manager for Cage Operations ("Assistant Cage Manager").  As an Assistant Cage Manager, it was Plaintiff's responsibility to oversee the activity of Cage operations, which included protecting Defendant's assets and controlling the activity of Cage employees, while providing excellent guest service. ECF No. 15, Ex. B (Assistant Cage Manager Job Description).

Throughout Plaintiff's employment as an Assistant Cage Manager, Shelia Mott ("Mott") was the Director of Cage Operations and responsible for overseeing the cage, count room, credit and collections, and scheduling the shift managers.  During Plaintiff's employment, Defendant employed two shift managers who supervised approximately 14-15 total assistant cage managers over three separate daily shifts (grave shift, day shift, and the swing shift).  Plaintiff worked on the day shift. Plaintiff testified that, given the limited number of assistant cage managers, the job duties for those on shift would increase, including the possibility of required overtime, when Cage Operations was short-staffed.

Defendant affords eligible employees with the statutory 12 weeks of leave time under the Family Medical Leave ("FMLA").  Defendant also has a General Medical Leave policy that provides up to 12 additional weeks of leave time beyond FMLA

leave for eligible employees. ECF No. 15, Ex. D (General Medical Leave of Absence Policy).  The General Medical Leave Policy does not guarantee job restoration during or at the end of leave, and Defendant does not pay medical benefits during this leave. Defendant also offers employees the option to request possible additional leave under the ADA. As set forth under the General Medical Leave Policy:

> a. If the employee is unable to return to work on or before the expiration of his/her General Medical Leave, he/she may apply for additional leave under the Americans with Disabilities Act. A request for extension must be delivered to HR Insider Access and be accompanied by appropriate medical certification completed by the employee's health care provider. The request must be submitted as soon as it is known that an extension is needed and at least two business days before the expiration of the General Medical Leave.
>
> b. All extensions of General Medical Leave must be approved in writing by HR Insider Access.

ECF No. 15, Ex. D.

Plaintiff experienced a series of unfortunate medical incidents in 2017. Plaintiff first became medically unable to work in April 2017 when she suffered a miscarriage for which she sought, and was granted, FMLA leave from Defendant. Plaintiff was granted two leave extensions related to her miscarriage, first through May 10, 2017, and then through June 18, 2017. ECF No. 15, Ex. F (Plaintiff's FMLA Paperwork). On June 8, 2017, while Plaintiff was still on leave, she was in a serious motor vehicle accident in which she sustained, among other things, back and neck injuries.  As a

result of those injuries, Plaintiff requested another leave of absence, initially through July 23, 2017. ECF No. 15, Ex. F.[1] Plaintiff's physician subsequently submitted a note seeking an extension of that leave through November 30, 2017.  As Plaintiff's entitlement to FMLA leave expired on July 14, 2017, Defendant continued Plaintiff's medical leave under the General Medical Leave of Absence policy for an additional 12 weeks, ECF No. 15, Ex. H, which meant Plaintiff's General Medical Leave expired on October 6, 2017 (the last day for the maximum six months of leave available under the General Medical Leave Policy). *Id*.

On September 15, 2017, prior to the expiration of her six months' leave, Defendant provided Plaintiff with forms to request some possible additional leave as an accommodation under the ADA. ECF No. 15, Ex. J.  Plaintiff's physician submitted Plaintiff's ADA paperwork along with the required physician certification on October 6, 2017.  Plaintiff's physician certified that "Patient is off work from 7/19/17 to approx 11/30/17." *Id*.  Plaintiff's physician also checked "yes" box in response to both of the following queries:

---

[1] Plaintiff's physician continually disabled her from employment, housework, and personal care, indicating she would require assistance with personal grooming, transfer from room to room, and driving. ECF No. 15, Ex. G (Excerpts of Physician-Ordered Replacement and Domestic Services); Ex. R (Plaintiff's Disability Certifications); Ex. K at E131 ("She needs assistance with domestic tasks.").  Plaintiff testified to the need for these services in her lawsuit against State Farm. ECF No. 15, Ex. P at 84.

6. Is the patient substantially limited in working?

7. Is the patient currently able to perform all of the functions of his/her position as outlined in the attached job description without restriction?

ECF No. 15, Ex. 8 (PgID 443). The physician form failed to provide responses to the majority of the questions in Defendant's paperwork that would further explain Plaintiff's ability or inability to work or Plaintiff's anticipated return date. In Plaintiff's portion of the ADA paperwork, she stated that she was unable to walk for long periods of time, unable to sit for long periods of time, had difficulty walking, lifting, and carrying, had some mental impairments due to her pain medication, and more. ECF No. 15, Ex. J. At her deposition, Plaintiff admitted that, regardless of her listed restrictions, her physician maintained that Plaintiff was completely unable to work until at least November 30, 2017. ECF No. 15, Ex. A at 50.

The October 6, 2017 ADA paperwork contained Plaintiff's statement that she had "spinal cord compression that requires surgery to decompress the spinal cord to prevent further neurological deficits and/or paralysis." *Id*. In Plaintiff's Complaint, she alleges that she was seeking additional time off for this surgery, ECF No. 1, ¶¶ 26 and 28, but no specific surgery date was provided to Defendant in the October 6, 2017 ADA paperwork. In fact, Plaintiff's surgery was originally scheduled for November 2, 2017, "but [it] had to be postponed because she did not have support from her family to help her recover." (Ex. K, E15). Plaintiff's medical records, and her

5

Complaint, indicate that the surgery was rescheduled to occur on December 7, 2017—a week after her "approximate" return to work date that was provided to Defendant.[2] Plaintiff's medical records also contain a November 9, 2017 physician note that indicated that Plaintiff would be unable to work until February 28, 2018. ECF No. 15, Ex. E at PgID 165.

Defendant's Labor Relations Partner Dalina Carter ("Carter") claims she spoke to Plaintiff as part of the ADA interactive process to better understand Plaintiff's condition, her accommodation request, and what Defendant might be able to do to accommodate her. ECF No. 15, Ex. M at 35, 49, 55). When Carter allegedly spoke to Plaintiff, however, Plaintiff told her that she was "not able to return to work" due to her disabilities. *Id.* at 49, 55; Ex. O at 54). Plaintiff, however, claims that Carter never spoke with Plaintiff, even though Plaintiff left messages with Defendant (Carter) on October 6, 2017 and October 10, 2017. Carter testified that, at some point in time,

---

[2] Plaintiff made the same statement to her surgeon on November 9, 2017 where the medical record notes: "She was scheduled for surgery, but then she was worried that she would not have anyone to help her at home, so she canceled the surgery. She rescheduled it for December 7 and is hoping to see if someone can help her while she is recovering." ECF No. 15, Ex. L at B33. It is undisputed that Plaintiff returned to her physician within two weeks of the October 13, 2017 appointment to reschedule the surgery for December 7. ECF No. 15, Ex. A at 64-65; Ex. L at B33-36.

6

Plaintiff informed Carter that Plaintiff did not believe she would be able to work when her leave ended on November 30, 2017. ECF No. 15, Ex. M at 49, 55.

On October 18, 2017, Mott notified Defendant's Human Resources that the department would be unable to accommodate a further extension of Plaintiff's leave and that a replacement request had been submitted. On November 7, 2017, Defendant mailed Plaintiff a termination letter.

### III.  LEGAL STANDARD

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S.

317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

## IV.     ANALYSIS

### A.     ADA/PWDCRA Claims

The standards for establishing a *prima facie* case for disability discrimination pursuant to the ADA and the PWDCRA are essentially the same and "claims under both statutes are generally analyzed identically." *Cummings v. Dean Transp., Inc.*, 9 F.Supp.3d 795, 804-05 (E.D. Mich. 2014).

> To establish a prima facie case for failure to accommodate under the ADA, a plaintiff must show that: (1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation.

*Judge v. Landscape Forms, Inc.*, 592 F.App'x 403, 407 (6th Cir. 2014) (internal citation omitted); *see also Burdett-Foster v. BCBS of Mich.*, 574 F.App'x 672, 680

(6th Cir. 2014); *DiCarlo v. Porter*, 358 F.3d 408, 419 (6th Cir. 2004); *Spiteri v. AT & T Holdings, Inc.*, 40 F.Supp.3d 869 (E.D. Mich. 2014). As part of establishing a prima facie case, the plaintiff "bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable." *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 870 (6th Cir. 2007) (quoting *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004)).

If a plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate some legitimate, non-discriminatory reason for the adverse employment action against the plaintiff. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805 (1973). Once the defendant offers a legitimate, non-discriminatory reason for its conduct, the burden shifts back to the plaintiff to demonstrate that the defendant's stated basis for the adverse employment action is a pretext designed to mask discrimination. *Texas Dept. Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *McDonnell Douglas*, 411 U.S. at 805. Pretext may be demonstrated if "the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).

9

Defendant first argues that Plaintiff was not "otherwise qualified for the position" because she had missed six months of work and Plaintiff had not designated a return to work date. The law in the Sixth Circuit is well-established that "where an employer has already provided an employee with a lengthy period of medical leave, an extension to that leave can be a reasonable accommodation only when its duration is definite." *Maat v. Cty. of Ottawa, Mich.*, 657 F. App'x 404, 412 (6th Cir. 2016) (citing *EEOC v. Ford Motor Co.*, 782 F.3d 753 (6th Cir. 2015) (en banc)). *See also Wilson v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 394 (6th Cir. 2017); *Aston v. Tapco Int'l Corp.*, 631 F. App'x 292, 294, 298 (6th Cir. 2015); *Walsh v. United Parcel Serv.*, 201 F.3d 718, 727 (6th Cir. 2000); *Robert v. Bd. of Cty. Comm'rs of Brown Cty., Kans.*, 691 F.3d 1211, 1218 (10th Cir. 2012) ("The employee must provide the employer an estimated date when she can resume her essential duties."). Plaintiff counters that she never requested an indefinite leave period, as she only requested additional leave time with a stated return date, and that a temporary leave of absence is recognized as a type of reasonable accommodation.[3]

Defendant also asserts that Plaintiff's claims fail as a matter of law because no physician had cleared her to return to work at the time she was terminated. *See*

---

[3] At her deposition, Plaintiff could not specify how much time off she was seeking in November 2017. ECF No. 15, Ex. A at 19.

*Gamble v. JP Morgan Chase & Co.*, 689 F. App'x 397 (6th Cir. 2017). In *Gamble*, the court stated:

> [A]n employee who has not been medically released to return to work, and therefore cannot perform the essential function of regularly attending his or her job, is not a qualified individual for purposes of the ADA. *See Anderson v. Inland Paperboard & Packaging, Inc.*, 11 Fed. Appx. 432, 438 (6th Cir. 2001) (holding that an employee failed to establish the second prong of a prima facie case under the ADA because her doctor "had not yet given her permission to return to work when her employment ... was terminated"); *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998) (holding that an employee had "not met the second requirement that she be qualified to perform the essential functions of the job" where she was not released by her doctor to return to work, failed to come to work for an entire year, and "gave no indication as to when she would be able to return to work").

*Gamble*, 689 F. App'x at 402. *See also Edgar v. JAC Prod., Inc.*, 443 F.3d 501, 514 (6th Cir. 2006) (holding that a plaintiff's subjective statements about her ability to return from FMLA leave "demonstrate nothing more than [plaintiff]'s belief that she was capable of returning to work and would have been willing to do so had her doctors released her for duty"); *Cisneros v. Wilson*, 226 F.3d 1113, 1130–31 (10th Cir. 2000) (overruled on other grounds) (holding that a plaintiff's "own belief is not sufficient to create a triable issue of fact, especially where . . . her belief is inconsistent with the evidence from her own doctors").

Defendant claims that: (a) Plaintiff testified that she was unable to work until December 2018, over a year after she was terminated, ECF No. 15, PgID 101; (b)

11

Plaintiff testified that she needed additional leave time at the time of her termination, ECF 1, ¶¶ 16-17, 28; (c) as of October 1, 2019, one doctor still refuses to return Plaintiff to work, ECF No. 15, PgID 74-75; (d) Plaintiff has sued, and continues to collect from, State Farm for wage loss benefits based on her claim of continued inability to work, ECF No. 15, PgID 76, 87-88; and (e) Plaintiff never presented to the Long Term Disability carrier a return to work note stating that she was medically able to return to work, as was required. *See* ECF No. 15, Ex. Q at PgID 487.  Defendant also cites Plaintiff's notes from a call she made to her physician on October 6, 2017, where she wrote, "Spoke with Caren from Records Dept. at Head & Spine.  She will complete the forms and enclose notes from Dr. Grias.  **Off work until 11-30-17**.  Recommend surgery.  Will fax today on 10/6/17." ECF No. 18, PgID 573 (emphasis added).  Defendant argues that Plaintiff's notes are consistent with the leave request Defendant received from Plaintiff's physician the same day (October 6, 2017), which stated that Plaintiff was "off work . . . to approx. 11/30/17." ECF No. 15, PgID 235.

Plaintiff focuses on two points.  First, she relies on the certification from her physician that was faxed to Defendant on October 6, 2017.  In that document, her physician checked the "yes" box in response to the following question: "7.  Is the patient currently able to perform all of the functions of his/her position as outlined in the attached job description without restriction?" ECF No. 15, Ex. 8 (PgID 443).

Second, Plaintiff cites a fax that she personally sent to Defendant on October 6, 2017, which included a written "Request for Accommodation" (a form created by Defendant). *See* ECF No. 15, PgID 231. Plaintiff contends that, because Defendant never challenged her request for a reasonable accommodation, there is a genuine dispute whether or not the request was reasonable. In the Request for Accommodation, Plaintiff described "the physical or mental impairment, limitation, illness, condition or diseases" that constituted the basis for her request as:

> Due to car accident that occurred on 6/8/17[,] I've been diagnosed with cervical disc disorder with myelopathy and spondylosis with radiculopathy. As a result from auto accident. I am unable to stand for long periods, sit for, periods, difficulty walking at a normal pace or long distances. I have spinal cord compression that requires surgery to decompress the spinal cord to prevent further neurological deficits and or paralysis.

*Id.* Plaintiff stated that she would be "unable to perform without a reasonable accommodation(s)" the following:

> Walking, Kneeling, Standing, Flexibility, Lifting 40 pounds, Carrying 40 pounds, long hours, some mental impairment due to . . . pain medication, and inability to concentrate due to pain during Flare-ups.

*Id.*

The Court concludes that there is no genuine dispute of material fact that Plaintiff was not "otherwise qualified for [her] position" at the time of her termination. In the certification dated October 6, 2017, Plaintiff's physician checked "yes" box in

13

response to the query whether "the patient [is] substantially limited in working?" and stated that "Patient is off work from 7/19/17 to approx 11/30/17."  Accordingly, Plaintiff was not "medically released to return to work, and therefore cannot perform the essential function of regularly attending his or her job, is not a qualified individual for purposes of the ADA." *Gamble*, 689 F. App'x at 402. *See also Edgar*, 443 F.3d at 514; *Cisneros*, 226 F.3d at 1130–31.  At her deposition, Plaintiff recognized that her physician (neurosurgeon) certified that she was off work until approximately November 30, 2017. ECF No. 15, Ex. A at 50 (PgID 104). Plaintiff acknowledged as much in her Complaint when she alleged that "her prior medical documentation requested leave up until December 1, 2017." ECF No. 1, PgID 4 (at , ¶¶ 16-17). Finally, Plaintiff's notes from a call she made to her physician on October 6, 2017 reflect that she was to continue to be "[o]ff work until 11-30-17" and that her physician "Recommend[ed] surgery."

The Court notes Plaintiff's argument that, in the October 6, 2017 certification, Plaintiff's physician checked the "yes" box in response to the query whether Plaintiff was able – at that time – "to perform all of the functions of his/her position."  That check of a box, however, was inconsistent with: (a) and in direct conflict with, the physician's other notations in that same certification, including that Plaintiff was "substantially limited in working" and Plaintiff was "off work . . . to approx

14

11/30/17;" (b) the allegations in Plaintiff's Complaint that she was on leave until December 1, 2017; (c) Plaintiff's deposition testimony that the physician put her on leave until December 1, 2017; (d) the receipt of long-term disability benefits from October 21, 2017 to March 31, 2018; and (e) the receipt of wage losses from State Farm. For these reasons, the Court finds that no reasonable factfinder would conclude that Plaintiff was able to perform all the functions of her position as of November 7, 2017.

The Court finds that, even if Plaintiff was a qualified individual at the time of her termination, Plaintiff cannot show that it would have been reasonably possible for Defendant to accommodate her. As Defendant asserts, Plaintiff's job duties required, among other things: (1) "strong analytical skills;" (2) the "[a]bility to lift and carry up to forty (40) pounds at a time;" (3) the "[a]bility to function and act independently;" (4) the "[a]bility to function in a fast paced environment, under short time constraints, and within established deadlines;" and (5) the "[a]bility to work a flexible schedule including extended hours, weekends, and holidays." ECF No. 15, Ex. B (at PgID 110-11).

The Court concludes that if all of the accommodations Plaintiff identified as necessary were implemented, Plaintiff could not have satisfied the requirements set forth in subparts (1)-(5), such that she could "perform the essential functions of [her]

15

job properly and safely." As noted above, when Plaintiff submitted her Request for Accommodation on October 6, 2017, Plaintiff indicated that she would need:

> Frequent Breaks from standing, sitting, and walking. . . . allow use of cane, walker, chair, or motorized scooter; schedule adjustments for rehabilitation . . . lifting and carrying restrictions per physicians statements allow.

ECF No. 15, PgID at 232.

Plaintiff's deposition testimony on July 1, 2019 similarly reflects that she would not have been able to meet those requirements on November 7, 2017 – or July 1, 2019. Among other things, Plaintiff testified that she was unable to work in any capacity in November 2017. ECF No. 15, Ex. A at 18-19, 39, 41-42. Plaintiff testified at her deposition on July 1, 2019 that she was "not completely mentally stable, emotionally stable to return [to work] at this time," ECF No. 15, Ex. A at 19, and that Dr. Redmond had never cleared her to return to work. *Id*. at 20. Plaintiff admitted that in the fall of 2017, her physician maintained that Plaintiff was completely unable to work until at least November 30, 2017. *Id.* at 50.

Plaintiff's medical records also contain a November 9, 2017 note prepared by Dr. Grias that stated that Plaintiff would be unable to work until February 28, 2018, ECF 15, Ex. E at PgID 165, which was three months beyond her "approximate" November 30, 2017 return date, more than five months after the expiration of her General Medical Leave, and more than four months after she was terminated. This

16

note was prepared pursuant to – and based on – an examination performed essentially contemporaneously with the date of her termination that occurred only two days earlier.

Plaintiff also received long-term disability benefits from Sun Life Financial from October 21, 2017 to March 31, 2018, the period during which Plaintiff contends she was able to work with reasonable accommodations. ECF No. 15, Ex. Q (at PgID 310). The representations by Plaintiff to obtain those benefits, together with Plaintiff's ongoing lawsuit against State Farm for wage loss and benefits stemming from the June 2017 automobile accident, ECF No. 15, Ex. P (at PgID 303-06), preclude Plaintiff's contentions to the contrary and indisputably establish that Plaintiff was unable to work in November 2017.

For the reasons stated above, the Court finds no merit in Plaintiff's contention that the timing of her termination (9 days after requesting a reasonable accommodation) satisfies her prima facie burden and shows pretext. As Plaintiff was not capable of performing her duties as of November 7, 2019, with or without reasonable accommodation, the proximity of termination to the date of her request is irrelevant. Likewise, even if Plaintiff "could later work" (in December 2018) with an accommodation that was reasonable, that was approximately a year after she was

terminated. Defendant did not have an obligation to hold Plaintiff's position open for that entire time.

## V. CONCLUSION

Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment, ECF No. 15, is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion for Leave to Supplement its Motion for Summary Judgment, ECF No. 19, is DENIED.

IT IS FURTHER ORDERED that Plaintiff's cause of action is DISMISSED WITH PREJUDICE.

Dated: April 28, 2023          s/ Denise Page Hood
                                       DENISE PAGE HOOD
                                       UNITED STATES DISTRICT JUDGE